LEO FRANK SUITER AND ALICE GAY SUITER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Suiter v. Commissioner
Docket No. 24204-88
United States Tax Court
T.C. Memo 1990-447; 1990 Tax Ct. Memo LEXIS 491; 60 T.C.M. (CCH) 562; T.C.M. (RIA) 90447; August 21, 1990, Filed *491 Decision will be entered under Rule 155. Held: Petitioners' music activity was engaged in for profit, within the meaning of section 183. Held further: Petitioners failed to substantiate a portion of the deductions claimed on their 1984 and 1985 tax returns for travel expenses, as required under section 274. Held further: Petitioners are disallowed the deductions claimed on Schedule A of their 1984 tax return for automobile expenses. Held further: Petitioners are entitled to the deduction claimed on their 1985 tax return for computer lease payments. Held further: Petitioners failed to substantiate a portion of the deductions claimed on their 1984 tax return for telephone expenses. Held further: Petitioners are entitled to the investment tax credit taken in 1985. Leo Frank Suiter and Alice Gay Suiter, pro se. J. Craig Young, for the respondent. WHITAKER, Judge. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in petitioners' 1984 and 1985 Federal income tax returns as follows: Year
Deficiency
1984
$ 5,815 1985
4,865 *493 After concessions, [1] the issues for decision are: (1) Whether petitioners' music activity was engaged in for profit during the years in issue, within the meaning of section 183. [2] We hold petitioners' music activity was engaged in for profit. [3]
*494 (2) If the music activity was engaged in for profit, what amounts, if any, are petitioners entitled to deduct in 1984 and 1985 for travel expenses under section 274. We hold petitioners failed to substantiate a portion of the deductions claimed for travel expenses in 1984 and 1985. (3) If the music activity was engaged in for profit, what amounts, if any, are petitioners entitled to deduct in 1984 and 1985 as ordinary and necessary expenses under sections 162 and 212. Petitioners are entitled to deduct the amount of expenses claimed on Schedule C of their 1985 tax return for computer lease payments as ordinary and necessary business expenses. Petitioners are disallowed the amount of deductions claimed on Schedule A of their 1984 tax return for automobile expenses. Petitioners failed to substantiate a portion of the deductions taken for telephone expenses on their 1984 return. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations and attached exhibits are incorporated herein by this reference. Petitioners, Leo F. Suiter and Alice G. Suiter, husband and wife, resided in Daleville, Alabama, at the time their petition was filed. Mr. *495 Suiter spent 20 years in the military and then another 10 years working for the Civil Service as a flight instructor. Since his retirement from the Civil Service, Mr. Suiter has been engaged in a music activity consisting of playing guitar and singing country/western music in a band or by himself. Prior to 1984, Mr. Suiter performed in 130 to 150 shows per year. In 1984, he performed in fewer shows. After 1984, the number of shows in which Mr. Suiter performed increased. Currently, Mr. Suiter performs in a three-piece band called Shawn Burnett and Dixie Express. Mr. Suiter's music activity included producing several single records, two albums, and some cassettes. Single records were released as early as 1974. The latest single record was released in 1988. The albums were first released in 1976. One album, called "Leo Suiter Live" features songs sung by Mr. Suiter. This album was released on an international basis by Gold Ring Records out of England. One tape, called "Kiss Country" is a duet tape including songs by Mr. Suiter and Debra Kensaw. Two songs from this tape are original songs, written and published by Mr. Suiter. The latest tape release of these albums was *496 in 1988. Petitioners purchased a Cadillac automobile for $ 18,513 in 1983. Petitioners testified that they used the Cadillac for the music activity. Mr. Suiter drove the Cadillac to and from trips to music performances. Petitioners treated the Cadillac as an expense of the music activity. On their 1984 and 1985 returns, they deducted automobile and depreciation expenses on the Cadillac. Based on their estimate of the percentage of use of the Cadillac in the music activity, petitioners deducted 100 percent in 1984 and 91.03 percent in 1985 for automobile and depreciation expenses. Mr. Suiter did use the automobile for trips to and from music shows. However, the evidence showed that the Cadillac was principally used by Mrs. Suiter to commute to and from work. Mrs. Suiter was a principal at a school during the years in issue. She commuted to and from work, from 7 A.M. to 5:30 P.M., 5 days a week, 12 months a year, in the Cadillac. The Cadillac stayed at the school between those hours. Mr. Suiter recorded the beginning and ending mileage for the Cadillac for the years 1984 and 1985, but did not keep a travel log showing mileage, location, and date of each trip. To promote *497 his music, Mr. Suiter requested radio stations to play his records, contacted record companies, such as Nymo Records in Nigeria, and hired an agent in Nashville. Mr. Suiter worked as a disc jockey at a country/western radio station for 7 months in 1984, without compensation. He testified that working as a disc jockey enabled him to learn more about the record business and how to promote his music. Mr. Suiter also sold advertising for the radio station. The owner of the station, Mr. Stanley, promised Mr. Suiter a 25-percent commission on advertising sales he made. Mr. Suiter was never paid a commission for any sales because the radio station was in debt. Mr. Suiter kept a log of the mileage he traveled while selling advertising. He drove a Citation automobile for this purpose. In 1984 and 1985, petitioners leased a computer which they used only for the music activity. The computer was used to record songs and to write letters to radio stations to send along with the records. Since 1982, petitioners conducted another activity involving sales of chewing gum from vending machines. Petitioners received gross income from all sources other than the music activity and vending *498 machine activity totaling $ 63,495 per year from 1982 to 1986. Petitioners filed joint Federal income tax returns for the years 1982 through 1988 and combined the income and expenses of both activities on one Schedule C for each year. Petitioners reported losses from these activities in years 1982 through 1986. The music activity showed a profit of $ 14 in 1987 and $ 1,020 in 1988. On Schedule C of their 1984 tax return, petitioners reported gross income of $ 874, operating expenses of $ 7,987, and depreciation expenses of $ 9,952, resulting in a net loss of $ 17,065. The operating expenses included $ 2,540 for automobile expenses and $ 948 for utility and telephone expenses. On Schedule C of their 1985 return, petitioners reported gross income of $ 1,013, operating expenses of $ 8,756, and depreciation expenses of $ 6,076, resulting in a net loss of $ 13,819. The operating expenses included $ 2,231 for automobile expenses and $ 1,685 for computer lease expenses. The net losses for 1984 and 1985 were attributable to expenses incurred solely in the music activity, rather than in both the music activity and the vending machine activity. On Schedule A of their 1984 tax return, *499 petitioners claimed a miscellaneous deduction in the amount of $ 1,585 for automobile expenses for the Citation automobile. On their 1985 tax return, petitioners took a $ 32 investment tax credit for equipment acquired for use in the music activity. Pursuant to a notice of deficiency, respondent determined that the music activity was not an activity engaged in for profit, within the meaning of section 183. Thus, respondent disallowed the full amounts of the Schedule C losses claimed on petitioners' 1984 and 1985 tax return. Respondent also disallowed an investment tax credit taken by petitioners in 1985. In the alternative, respondent determined that if the music activity was engaged in for profit, then the Schedule C expenses claimed for the taxable years 1984 and 1985 would be allowable only to the extent of $ 9,297 and $ 5,022, respectively, because petitioners failed to substantiate all the deductions claimed. Respondent limited petitioners' deductions for 1984 to automobile expenses in the amount of $ 1,401; depreciation expenses in the amount of $ 4,043; and telephone expenses in the amount of $ 682. Respondent limited petitioners' deductions for 1985 to automobile expenses *500 in the amount of $ 490 and depreciation expenses in the amount of $ 1,446. Respondent disallowed the deduction for computer lease payments. OPINION Petitioners argue that their music activity was engaged in for profit and, therefore, they were entitled to the deductions taken in 1984 and 1985 as ordinary and necessary expenses of the business. Respondent contends that the music activity "had none of the trappings of a business," and was not engaged in for profit. In the alternative, if the music activity was engaged in for profit, respondent contends that petitioners are disallowed portions of the deductions claimed on Schedule C of their 1984 and 1985 tax returns because petitioners failed to substantiate all the expenses. In addition, petitioners are not entitled to the Schedule A miscellaneous deduction in 1984 for automobile expenses. Petitioners' right to the deductions taken in 1984 and 1985 is dependent on their showing that the activities constituted a trade or business or were undertaken and carried on for the production of income. See Flowers v. Commissioner, 80 T.C. 914, 931 (1983); Pike v. Commissioner, 78 T.C. 822, 841 (1982), *501 affd. without published opinion 732 F.2d 164 (9th Cir. 1984). To accomplish this, petitioners must demonstrate that they engaged in this activity with an "actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 646 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Fuchs v. Commissioner, 83 T.C. 79, 98 (1984); Dean v. Commissioner, 83 T.C. 56, 74 (1984). The question is not whether the taxpayers' expectation of profit was reasonable, but whether they held an actual and honest profit objective. Engdahl v. Commissioner, 72 T.C. 659, 666 (1979); Golanty v. Commissioner, 72 T.C. 411, 425-426 (1979), affd. without opinion 647 F.2d 170 (9th Cir. 1981); Allen v. Commissioner, 72 T.C. 28, 33 (1979). Profit objective is a question of fact to be determined from all the facts and circumstances. Allen v. Commissioner, supra at 34; Dunn v. Commissioner, 70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980). Respondent's regulations set forth nine relevant *502 factors to be considered in determining whether an activity is engaged in for profit. Sec. 1.183-2(b), Income Tax Regs. These factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer in carrying on the activity; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that an asset used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of profits, if any, that are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation enjoyed by the taxpayer from his involvement in the activity. Sec. 1.183-2(b), Income Tax Regs.
In deciding whether the requisite profit objective exists in any case, the presence of one, or even a majority of these factors is not determinative. Benz v. Commissioner, 63 T.C. 375 (1974); Golanty v. Commissioner, supra.In some cases none of these factors may be relevant. Also, greater weight must be given to objective *503 facts than to petitioners' mere statements of their intent. Siegel v. Commissioner, 78 T.C. 659, 699 (1982); Engdahl v. Commissioner, supra.
Section 183(d) provides that if the gross income derived from an activity for 2 or more of the taxable years in the period of 5 consecutive taxable years which ends with the taxable year exceeds the deductions attributable to the activity, then such activity shall be presumed to be an activity engaged in for profit. Such presumption applies with respect to the second profit year and all years subsequent to the second profit year with the 5-year period beginning with the first profit year. Sec. 1.183-1(c), Income Tax Regs. No such presumption will arise with respect to the music activity for the years in issue because the music activity showed no profit prior to or during the years in issue. Respondent argued that petitioners did not carry on the music activity in a businesslike manner. Petitioners did not maintain complete and accurate books and records or separate bank accounts. Petitioners operated the music activity in their home. Respondent argued that Mr. Suiter spent a limited amount of time *504 in the music activity. Mr. Suiter does not operate any other business or activity, other than the vending machine activity which requires little of his time. The rest of his time is devoted to the music activity. Mr. Suiter testified that he performed in 130 to 150 shows prior to 1984. In 1984, the number of performances decreased. However, after 1984, the number of performances increased. Mr. Suiter is currently performing in a band. Mr. Suiter testified that he made several recordings of single records, albums, and cassettes. He promoted his music through correspondence with radio stations in this country and Nigeria. Mr. Suiter testified that there is an interest in Nigeria, Tennessee, and New Jersey in his records. These endeavors all required time and effort on Mr. Suiter's part and the number of recordings and performances indicate that Mr. Suiter has some expertise in the music activity. Respondent argued that petitioners have a history of losses with respect to the activity. Petitioners reported losses from the music activity for the years 1982 through 1986. Petitioners' music activity showed small profits in 1987 and 1988. The history of losses were attributable *505 to high automobile expenses and depreciation expenses claimed in connection with the use of the Cadillac in those years. The other operating expenses were attributable to advertising, office expenses, supplies, utilities and telephone expenses, and licenses, all ordinary expenses of a business. For this type of activity, it is possible such losses in the early years of the activity are normal. The music activity did show a small profit in 1987 and 1988. Petitioners' automobile and depreciation expenses decreased sharply for both those years. Respondent argued that the small profit may have been attributable to the vending machine business. Petitioners testified that the vending machine activity did not make any profit; therefore, any profit in 1987 and 1988 would be attributable to the music activity. Petitioners have substantial income from other sources, which might indicate that the music activity was not entered into for profit, but was instead a recreational pursuit. Mr. Suiter does derive personal pleasure from performing his music in shows. It is not necessary that Mr. Suiter engage in an activity with the exclusive intention of deriving a profit. Mr. Suiter testified *506 that he engaged in the music activity to make a profit. The income from the other sources is retirement pay and not income from an activity that petitioner was engaged in at the same time as the music activity. Based on all of the facts and circumstances, we hold that petitioners' music activity did constitute an activity engaged in for profit. Petitioner is entitled to the investment tax credit claimed in 1985. Even if petitioners' music activity was engaged in for profit, petitioners may not be entitled to all of the deductions claimed on their 1984 and 1985 tax returns. Petitioners bear the burden of establishing that they are entitled to all of the deductions claimed in the activity which respondent has disallowed. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933)
Section 274(d) provides that no deduction shall be allowed under section 162 or 212 for any traveling expense unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement the amount of such expense, the time and place of the travel, and the business purpose of the expense. To meet the "adequate records" requirement of section 274(d), a taxpayer *507 must maintain an account book, diary, statement of expense or similar record, and documentary evidence which, in combination, are sufficient to establish each element of an expenditure. Sec. 1.274-5(c), Income Tax Regs. The elements to be proved with respect to an expenditure for travel are the amount of each separate expenditure for traveling away from home, the date of departure and return, the destination, and the business reason for the travel. Sec. 1.274-5(b), Income Tax Regs. If a taxpayer fails to establish to the satisfaction of respondent that he has substantially complied with the "adequate records" requirements, the taxpayer must establish each element of the travel expenditures by his own statement, oral or written, containing specific information in detail as to such elements, and by other corroborative evidence sufficient to establish such elements. Sec. 1.274-5(b), Income Tax Regs.
Petitioners claimed that the percentage of use of their Cadillac in the music activity was 100 percent in 1984 and 91.03 percent in 1985. Respondent agreed that petitioners correctly computed depreciation on the Cadillac. Respondent disagreed with petitioners as to the correct percentage *508 of use of the Cadillac attributable to the music activity. Respondent contends that the correct percentage of use of the Cadillac was 16 percent in 1984 and 20 percent in 1985. Petitioners claimed that the Cadillac was also used for trips to performances made by Mr. Suiter in connection with the music activity. However, petitioners produced no records or evidence to show the mileage on the Cadillac for these trips. Petitioners both testified that Mrs. Suiter drove the Cadillac to and from her job. Mrs. Suiter worked 5 days a week from 7 A.M. to 5:30 P.M., 12 months of the year. The Cadillac remained at the school during those hours. We conclude that petitioners failed to substantiate the actual percentage of use of the Cadillac attributable to the music activity. Therefore, petitioners are disallowed a portion of the deductions claimed in 1984 and 1985 for automobile and depreciation expenses as determined by respondent. Section 162 allows deductions for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Petitioners deducted telephone expenses on Schedule C of their 1984 tax return as ordinary and necessary *509 business expenses of the music activity. Petitioners could not establish that 100 percent of these expenses were attributable to the music activity. Since petitioners could not allocate these expenses between personal and business use, petitioners are disallowed a portion of the deduction claimed for these expenses as determined by respondent. On Schedule A of their 1984 tax return, petitioners deducted automobile expenses purportedly incurred in connection with use of the Citation automobile by Mr. Suiter while selling advertising for the radio station in 1984. Petitioners claimed this expense was an ordinary and necessary business expense of the music activity. Respondent contends that the petitioners are not entitled to this deduction because they failed to establish that the Citation automobile was an ordinary and necessary business expense of the music activity or that the expense was for the purpose designed. The notice of deficiency disallowed the automobile expense. The pretrial order required all documents to be exchanged 15 days before trial. Mr. Suiter did not provide respondent with any travel log or other document as evidence of the mileage incurred to sell advertising *510 prior to 15 days before trial. At the trial, Mr. Suiter asked the Court to enter a travel log into evidence to establish the mileage and use of the automobile. Respondent objected. The Court sustained the objection. We conclude that petitioners failed to substantiate the expense as an ordinary and necessary expense of the music activity. The deduction is disallowed. Rule 132(b). Petitioners claimed a deduction for computer lease payments totaling $ 1,685 in 1985 as ordinary and necessary business expenses of the music activity. Respondent conceded that petitioners made the computer lease payments totaling $ 1,685 during 1985, but contends that such payments were not ordinary and necessary business expenses under section 162. Respondent does not challenge the deduction under section 280F. Mr. Suiter testified that petitioners used the computer only for the music activity in 1985. The computer was used to record songs and for correspondence to radio stations. Based on this testimony, we conclude that petitioners are entitled to the deduction for the computer lease payments as ordinary and necessary expenses of the music activity. To reflect the foregoing and concessions *511 by the parties, Decision will be entered under Rule 155.
Footnotes
1. During the trial, petitioners conceded that costs for producing new copies or master recordings of records were not deductible for the years in issue. These deductions are disallowed under section 280(a). Section 280(a) requires capitalization of costs incurred in producing sound recordings. The production costs are prorated over the projected income stream period. During 1984 and 1985, there was no income from the sale of records or albums. Therefore, no deduction is allowed for those 2 years. Section 280(b).↩
2. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Since petitioners' music activity was engaged in for profit, petitioners are entitled to deduct the investment tax credit.↩